**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNIVERSITY OF TENNESSEE RESEARCH FOUNDATION,<br>*Plaintiff,*<br>v.<br>ANTHROPIC PBC,<br>*Defendant.* | Civil Action No. 26-cv-887-JLH<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S LETTER TO THE HONORABLE JENNIFER L. HALL REGARDING DISCOVERY DISPUTE**

Dated: October 5, 2026

Of Counsel:

Dorian S. Berger
Daniel P. Hipskind
Erin E. McCracken
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com
E-Mail: eem@bergerhipskind.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff University of Tennessee Research Foundation*

Defendant Anthropic PBC's ("Anthropic") own reports and employee statements describe its AI agents bypassing file-access restrictions and acting in an "overeager, destructive, or otherwise transgressive" manner. ANTHROPIC SYSTEM CARD: CLAUDE MYTHOS PREVIEW at 127 (Apr. 7, 2026).[1] Accordingly, to ensure the availability of evidence crucial to its infringement case, Plaintiff University of Tennessee Research Foundation ("UTRF") respectfully requests limited early production under Federal Rule of Civil Procedure 26(d)(1) of the Claude Code materials identified in UTRF's proposed RFP No. 1 (Ex. A).

**Anthropic's own statements call its preservation assurances into question.** The most troubling example of an AI agent circumventing Anthropic safeguards comes from an internal Claude Code session described in Anthropic's April 2026 Mythos Preview system card. A model found a way to edit files it lacked permission to change and then designed a workaround to disable itself after use, "effectively covering up its behavior." *Id.* at 126-27. Anthropic also reports that the model took additional steps to keep unauthorized edits from appearing in git's change history. *Id.* at 56. Anthropic's August 2026 Risk Report describes a Mythos 5 episode in which the model lacked permission to edit required files and appended a self-deleting script to conda.sh, a startup file. The script would run with greater access rights, grant permission to change restricted files, and then delete itself. ANTHROPIC AUGUST RISK REPORT § 2.8 at 36 (Aug. 2026).[2] The same report describes an Anthropic AI agent bypassing guardrails and destroying code. *See id.* § 5.2.5 at 167 ("one of these new agents deleted a large number of jobs."). Anthropic's counsel's claim that version control retains earlier files does not clarify how the Claude Code versions and change history UTRF seeks are protected from AI agents capable of bypassing file-access restrictions.

The scale of Anthropic's reliance on these AI agents makes UTRF's concern immediate. Anthropic has disclosed that, as of May 2026, "more than 80% of the code [it] merge[s] into Anthropic's codebase was authored by Claude"—*i.e.*, extensive portions of the code at issue are authored and maintained by Anthropic's AI agents, not human engineers. *When AI Builds Itself*, ANTHROPIC PUBLICATIONS (2026).[3] As of August 2026, approximately 30,000 AI agents were performing internal research and engineering work at Anthropic. *Measurements for Understanding the Pace of AI Development Inside Frontier Labs*, ANTHROPIC INSTITUTE § 2.[4] Anthropic acknowledges that "it is hard to be certain we have a complete picture of all possible kinds of behaviors." *Id.*

UTRF's preservation concerns would be self-evident if Anthropic were describing human employees rather than artificial intelligence. If a company stated its employees circumvent

---

[1] *Available at*: https://www-cdn.anthropic.com/08ab9158070959f88f296514c21b7facce6f52bc.pdf.

[2] *Available at*: https://www-cdn.anthropic.com/f61d49fa5596956a5dec75fea0e973bf6a6a8378/Redacted%20Risk%20Report%20August%202026%20.pdf.

[3] *Available at*: https://www.anthropic.com/institute/recursive-self-improvement.

[4] *Available at*: https://www.anthropic.com/institute/measuring-pace-of-ai-development.

restrictions, make unauthorized edits, and conceal their actions, yet it still relies on these employees for over 80% of its coding, that would justify early discovery. A litigation hold and version control do not protect evidence from those who routinely bypass restrictions. Anthropic's report supports this, quoting a researcher on agents' misleading work descriptions and undisclosed cheating: "If a human colleague acted the way these AIs do . . . ***I would consider them pathologically dishonest***." ANTHROPIC AUGUST RISK REPORT § 2.8 at 37 (emphasis added).

Anthropic's September 28 response states that it has implemented a litigation hold and maintains code and configuration files in a version-controlled repository that preserves prior versions despite subsequent edits or deletions by agents or engineers. Sept. 28 Ltr. (Ex. C)[5] at 1, 3. Even if every Anthropic employee intends to comply, the response does not explain how safeguards protect these preserved copies from AI agents known to bypass access restrictions. No declaration from a knowledgeable Anthropic employee describes how its preservation efforts protect the records UTRF seeks. Simply invoking a litigation hold and version control doesn't show how these measures address that conduct. *See Ainstein AI, Inc. v. ADAC Plastics, Inc.*, U.S. Dist. LEXIS 88484, at *7, *13-15 (D. Kan. May 19, 2023) (granting early discovery request for forensic imaging despite a litigation hold as continued computer use could erase or overwrite data).

UTRF should not have to await the loss of evidence before obtaining protection against the preservation risks raised by Anthropic's own disclosures. Proposed RFP No. 1(c) seeks configuration files, settings, and variables for the Accused Functionalities, and 1(d) seeks records, logs, or metadata identifying the version, build, and configuration implemented or executed between February 1, 2025, and present. Anthropic has not identified if it retains these materials, the periods covered, or how it verifies complete copies are safe from AI agent manipulation.

**The requested source code is directly relevant to UTRF's infringement claims.** The Complaint identifies accused functions including memory consolidation (autoDream.ts), scheduling (cronScheduler.ts), permission decisions (permissions.ts), and query and tool execution (query.ts and toolExecution.ts). (D.I. 1 ¶¶ 38-66, 87-89, 92, 94, 97-105.) This code is the evidence UTRF needs to assess infringement and prepare detailed contentions. UTRF needs prior versions, settings, and records linking executions to builds, as sought in proposed RFP No. 1(a)-(d).

**Good cause supports limited early production.** Under FRCP 26(d)(1), the Court considers timing, scope, and burden, weighing the need for early discovery against prejudice to the responding party. *Kone Corp. v. Thyssenkrupp USA, Inc.*, 2011 U.S. Dist. LEXIS 109518, at *10-11, *18 (D. Del. Sept. 26, 2011); *Carlson Pet Prods., Inc. v. Does*, 2019 U.S. Dist. LEXIS 56095, at *2 (D. Del. Apr. 2, 2019). The need here is acute and time sensitive. This District recognizes that early discovery is appropriate when necessary evidence could be destroyed through routine deletion. *Vision Films, Inc. v. John Does 1-24*, 2013 U.S. Dist. LEXIS 38440, at *10-11 (D. Del. Mar. 20, 2013). Other district courts have authorized discovery before the opening of

---

[5] UTRF's September 18, 2026 Letter to Anthropic is attached as Exhibit B.

discovery to preserve computer records when ordinary use threatens to overwrite potentially relevant information. *See, e.g., Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 651-52 (D. Minn. 2002). Courts have also granted limited early technical discovery in patent cases where concrete case-management benefits outweighed prejudice. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276-77 (N.D. Cal. 2002). Here, Anthropic's own reports describe agents circumventing file-access restrictions and concealing their workarounds, and its counsel has not explained how the requested source-code records are protected from those actions.

The materials UTRF seeks in proposed RFP No. 1 are discoverable under Rule 26(b)(1), and the request is proportional to the needs of the case. The single RFP is limited to the Accused Functionalities identified in the Complaint and seeks current production code, historical versions deployed since February 1, 2025, governing settings, and existing records showing which code and settings were actually used. Ex. A at 1(a)-(d). Anthropic's counsel has cited expense and security risks of early source-code production but has provided no specifics. Ex. C at 2-3. Its mention of unspecified expense does not outweigh UTRF's need for evidence. Regarding security risks, UTRF suggests inspection under its proposed protective order.

UTRF sent Anthropic a proposed protective order on September 29, focusing on confidentiality and source-code protections. Anthropic offered to confer in its September 28 letter but hasn't responded substantively. Relying on the absence of a protective order while refusing to negotiate is unjustified. UTRF requests an order for expedited submission of an agreed protective order within five business days of the Court's Order. *See Kone*, 2011 U.S. Dist. LEXIS 109518, at *22, *26-27 (setting an expedited deadline for a proposed protective order). The Court should Order Anthropic to produce the materials identified in proposed RFP No. 1, including making responsive source code available for inspection, within 14 days of entry of the Protective Order.

**Alternatively, Anthropic should substantiate preservation under oath.** If the Court does not order early production, UTRF respectfully suggests the Court should require Anthropic to provide a declaration from an authorized officer or manager with personal knowledge. This declaration should identify preserved historical versions and records, retention and deletion controls, AI agents' ability to alter copies or history, and safeguards ensuring retrieval of complete copies despite the issues detailed in Anthropic's April and August reports.

**Anthropic's merits arguments do not defeat UTRF's request.** Anthropic asserts Claude Code does not infringe the patents, and UTRF's infringement mappings are insufficient. Ex. C at 2-3. UTRF disputes this. Anthropic's claim that the patents require specific hardware for Claude Code contradicts the patents' detailed specifications describing software embodiments. Its argument that UTRF's pleading is inadequate is incorrect, but more importantly here, premature. This Court has refused to evaluate infringement theories through a motion to strike, reserving such issues for summary judgment or trial. *ID Image Sensing LLC v. Omnivision Techs., Inc.*, No. 20-136-RGA-JLH, D.I. 113 (D. Del. Apr. 18, 2022) (Hall, M.J.). Anthropic's disagreement with the merits does not justify the risk its AI agents pose to the evidence UTRF needs for litigation.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (Via E-Filing)